Good morning, my name is Ben Lechman. I represent the appellant Miguel Alvarez-Adame. If possible, I'd like to reserve two to three minutes for rebuttal time. Very well. Just keep an eye on the clock, counsel. I'll do that. The court, the district court, in Mr. Alvarez's case, in many ways, probably maybe one of the most important ways, is with its guideline interpretation denying Mr. Alvarez-Adame a three-level reduction for his acceptance of responsibility. In this case, I think that Mr. Alvarez did everything possible. I wasn't trial counsel, but I think between the two that he had, he did everything possible that could be required of him to receive the acceptance adjustment. He actually offered to plead guilty. He just wanted a conditional plea to preserve his collateral attack. The government would not agree to that. So rather than proceeding before a jury and filing other motions with regard to the actual issues of the elements of the offense, he did a stipulated facts bench trial. So it was basically like a slow, guilty plea, and that's only because the government would specifically not agree to allow him to plead guilty. He didn't contest any element of the offense at all. The only issue, it seemed like, animating the district court's denial of the acceptance adjustment was the district court's erroneous view that Mr. Alvarez's interpretation of the waiver, the mass waiver that was done in his prior deportation hearing, that he somehow misrepresented what had happened. And I think in the beginning of the criminal case, he had filed a declaration that was not drafted by him, but rather his counsel at the time, that said that he couldn't recall, he didn't believe he was advised of his right to relief. Judge Burns, I think, deferred on the motion at that time, indicating it would be difficult to decide it without Mr. Alvarez coming forward definitively. Thereafter, Mr. Alvarez, I think, took the stand and made a statement to the district court that definitively, it didn't happen. He was not actually told about his right to relief. He clearly remembered that. Yes. He said, I think. He did. But the thing is, when you went back and hit the court actually took a look back at history, you find out that he had been consistent in what he had maintained right after. That's not what Judge Burns found, is it, Mr. Lachman? The problem I have with your argument is that you're essentially quarreling with a finding of fact by Judge Burns that your client was not credible because in his first declaration he essentially said he couldn't recall one way or the other whether or not he had been advised of these rights. But then at trial he was emphatic, as Judge Burns thought, because he now understood the legal significance and therefore testified in what the district court found was an inconsistent manner. So it seems to me that in order to accept your argument, you have to convince us that the district court clearly erred in its factual finding. Have I got the legal analysis correct? I just disagree with one aspect of your recitation of facts. I don't think that it was an error in fact. It's really an error in law. And I agree that he, based on what Judge Burns perceived as an error of law, he felt that diminished Mr. Alvarez's credibility. But the error of law is whether or not what happened at his prior deportation hearing, whether or not he was advised of his right to release. If he was, it's an error of law. No, that's not what I'm focusing on. That's a separate issue which we look to the record to determine based on the transcript that we now have. What I was asking you about was the discrepancy that the district court found between his sworn declaration and his testimony at the trial, which differed in the district court's mind significantly from what he had previously sworn. But there are two things here I think to support his version of events, and I think that also makes this more of a legal issue than a factual. That's where I'm having a hard time following your argument. I don't understand why that's an issue of law at all. That's a pure issue of fact for the district court sitting in a bench trial as the finder of facts to determine whether or not the defendant witnessed, testified credibly at the trial. Testified about what? About the law in existence at the time. The law is that he was entitled to be advised. He was not advised. And, in fact, there was proof that after the first deportation hearing, he sent, and this was in the record, several letters to the INS saying, look, I was not advised of my right to release. And so he was not advised of his right to release.   He's not advised of his right to release. Furthermore, his trial counsel explained the discrepancy between the affidavit, because she drafted the affidavit, not Mr. Alvarez. And so Mr. Alvarez, every time he has spoken on this, he has been 100 percent consistent from the moment – and he didn't have a motive to fabricate. I mean, I think Judge Burns is saying, well, there's a motive to fabricate later. And I say, you know, by analogy, like the rules of evidence, you say you can introduce a prior consistent statement if – or consistent statement, excuse me – if the prior statement was made before the motive to fabricate. And that's what really happened here, because immediately in time – But the district court found that the motive to fabricate arose when Mr. Adame understood the legal significance of the argument that he had not been properly advised of his 212C rights at the immigration hearing, and that it wasn't until he got up on the witness stand, after being informed of the legal significance of that omission, that his testimony changed. Why is that an erroneous finding by the district court as to his motivation to fabricate? Because he made the same statements immediately after being deported, which is years before the time we're talking about with Judge Burns. He was emphatic. There's several letters that are in the record in his A file where he had written to the Immigration Service saying, listen, I was recently deported. I was not advised of my rights of release. That's not factual, though. You're talking about prior consistent statements, prior inconsistent statements. He said, I was never told of my right to appeal. And when he gets up, he says, I clearly recall I was not told. At first he said I don't remember. At first he said he was not told. Judge Fernandez, excuse me. If you could move the mic, Judge Fernandez. Yes. Then I could hear you better. Okay. Can you hear me better now? Perfectly now. Okay? Okay. That's perfect. Okay. The point is, the point is what we're talking about is evidentiary questions. You're saying it's legal. Okay. Evidence is legal, too. I think we understand that. But the point is you're saying, well, there were prior consistent statements that showed he was okay. Well, it was a prior consistent statement, so the district court didn't believe it. The district court saw him, listened to how he testified, listened to what was going on, and the district court believed that he was making it up. Well, if it's true, it's true. The whole point, I think we're missing the point, is that the only reason the point is an issue is because it's a legal point. It's important as to its legal ramifications because it's a legal thing. Counsel, Judge Gould, I have a question for you. Sure. I think on the acceptance of responsibility, you know, it's pretty well covered in the briefing. At least I think I understand the issue, and we review it for abuse of discretion. So from where I'm coming from, I would appreciate it if before your time runs out, you somewhere address the Rule 32 violation issue because that's a rule where instead of reviewing for abuse of discretion, we have some precedent about strict compliance with the rule. I just would like to make sure you touch on that issue before your time is gone. Thank you, Your Honor. I'll touch on that right now. It's not that we have some precedent requiring compliance. We have all precedent, every single case, I think, addressing Rule 32 is strict compliance. So it's very strict compliance, not some compliance. In this case, at the time of the sentencing hearing, which I believe was May of 2007, where, and this is I think what happened was because there was a change in trial counsel, I don't think there was good communication between the two lawyers, but once the second attorney got to sentencing, he says, you know, Mr. Alvarez has filed these objections to these various criminal convictions being used to enhance his sentence under the guidelines and under the statute. And Judge Burns said, you know, I think I've, in a great irony of the case, I think, I think that I previously made findings about this, but he didn't. And in fact, the documents that the government submits in its supplemental ER as proof of those things was not submitted until well after, a month after these alleged findings that Judge Burns makes. And if you go back in the record to the Illuminate hearing, which is I think where he decided the collateral, the collateral attack issue, and I think that's what he's referencing, he never made a specific finding with regard to any of the criminal convictions. He said in a manner of just sort of a stream of consciousness sentence, well, there's a rape, there's this or that, but he never looked at it categorically. You know, under, I think it's Valle Montalvo and Santiago Pacheco, this Court, you know, the prior plus 16 convictions need to be approved by clear and convincing evidence. And I think Judge Burns said, you know, I think I made findings about this before. And being wrong about that, that doesn't comport with clear and convincing evidence, making sure there's strict compliance with Rule 32. Go ahead. Let me make sure I understand what the problem is. If I understand what we're aiming at is the California conviction in which he was in print, he was given his 365 days. His probation or parole were violated a couple or three times, and he was sent back and then released. If I understood the objection, the objection was he doesn't recall exactly how much time he spent on each of those revocations. If all of them together exceeded one month, he'd be into the 15-year problem, and he's going to go down in terms of the three points. I think that was the argument. Is what we're dealing with here that the he said he put them to their proof about how long he was busted on those three parole violations? Is that what we're dealing with? I guess I see it a little differently. In order for the government to obtain the 16-level upward adjustment under 2L1.2, the illegal reentry guideline, the government would need to prove by clear and convincing evidence that Mr. Alvarez-Adame had a prior conviction that qualified either as a categorical matter or if it was established it was overly broad, as the Court's well aware, under a modified categorical approach where you'd have to look at certain documents to see if his conduct fell within one of these categorical type offenses. So you say you're not arguing the criminal history points, then. Is that correct? Your argument is not about criminal history points. It's about whether categorical things were? As to both. What are you talking about? I mean, there's two ways the prior convictions score. One is under Section 4, the criminal history category. But I think more importantly is under the 16-level upward adjustment or the part of the legal reentry statute that increases the statutory maximum from 2 to 20 years. All three of those prongs or all three of those laws, groups of laws, require proof of his prior convictions. In regard to the 2L, the statutory and the illegal reentry specific defense guideline, those require what's clear and convincing for the guideline beyond reasonable doubt for the statute. But in this case, there wasn't even clear and convincing evidence because there was just some discussion about the general type of convictions during the motions and during trial. It's the sentencing when the government says we want this enhancement, Judge Burns and the defense attorney at that time says, well, there's got to be proof. Judge Burns erroneously says, you know, I think I made proof at this prior hearing about a month ago. But that's not true. He didn't make any of the specific findings that would be required under Rule 32, that would be required just in terms of increasing the guidelines under 2L1.2 or the statute. What do you make of the transcript at page 11, excerpt of record, page 16, lines 9 through 12? My excerpt of the government's. I think. I can't. He's combed down. Well, I'm looking at page 11 of the sentencing here. How's that? And the statement is made by Mr. Nieder. I believe the other issue that we probably need to address is the government's request for underrepresentation and defense's argument that the Category 6 is actually overrepresented. And Judge Burns says he's got a horrible record. I think that would be justified as well. Why isn't that a ruling on the objection with regard to the criminal history? Well, it helps him up both to a Category 6 and makes him eligible for the 16-level increase. Just say he has a horrible record. There's no guideline that says if he has a horrible record, he gets 16 points. The guidelines would say if he has a crime of violence with a sentence of so long, if he had a drug trafficking crime, a sentence of over 13 months. Saying he's got a horrible record is as far across from what the report is. But when the Court says, I think that would be justified as well, why can't I read that as a ruling? And at that point, isn't it incumbent upon defense counsel to then say, Your Honor, I raised an objection with regard to the sufficiency of the proof. But defense counsel doesn't say a word at that point. He just essentially accepts the sentencing judge's ruling, and then they move on to another argument. Well, he says he's got a bad record. I think it's covered. It hasn't covered. And, in fact, under the rule of Houston, there's a case, Judge Jones' case from the Southern District, where Judge Jones says, well, you know, I think this is good enough. He's got a pretty bad record. You know, I guess that's enough. And then this Court actually sort of strongly words the pig and said, you know, guessing is for game show contestants. There needs to be some analysis here. And I think that what we're talking about is increasing the sentence when it's being the 16-level increase is being sought. And this Court says you have to have clear and convincing proof. I think the response, he's got a horrible record, that would be justified, doesn't cut it. Counsel, your time has expired. I'll give you a couple minutes on rebuttal, but we'll give the government a chance to speak now.  Mr. Alexander? Good morning. May it please the Court, Christopher Alexander for the United States. The appellant raises five issues on appeal, essentially two of which were addressed in the opening statements. And I think what's important here is to actually step back and look at what the facts were in this case. And what I'd like to do is to start with the acceptance of responsibility, to which the panel seemed to focus during the beginning portion of the argument. As pointed out previously, the defendant elected to challenge his deportation. He filed a collateral attack.  That declaration included, I would quote the following statement, I do not remember ever being advised by an immigration judge of my right to appeal my deportation. Now, in another section, he also states he doesn't recall ever being advised of his rights to relief as well in that declaration. That occurred on April 2, 2007. Next, on April 16, 2007, the district court raised issues regarding that declaration, stating that the declaration itself was going to be insufficient, simply stating that I don't remember does not create an issue of fact. And the district court said, and I'll quote it from excerpt from record number 55, not I was there and I have a clear memory and they told me any of this. So the idea being that the district court was actually telling the defense counsel as well as the defendant the type of information that would actually raise an issue that needed to be litigated. So the next day, on April 17, the defendant elects to testify and to try and create that issue of fact. And that's excerpts of record number 33 through 35. And I'll quote some portions of that. At the time of that deportation, when I was taken there, we were taken as a whole into this room with an immigration judge supposedly. And he said, is all, you all accept deportation? And that is all that was said. That is why there is no tape. He is affirmatively telling the district court that there's no tape because he was never advised of any rights. That he was told he has to accept deportation by the immigration judge. The defendant continued, quote, I have a clear memory of what happened, actually, because nothing really did happen. Because we were in for five minutes, then we were out next. We didn't get nothing. And no, we were not addressed personally. Then the district court went on further to question the appellant to say, look, we've got to make this crystal clear. Regarding your appellate rights, were you ever advised of anything? Quote from the defendant, no, he did not. For certain, I assure you, he did not. That is the defendant's own statements under oath before the district court. Now, what happens next? The deport tape arrives, and it's submitted along with the conviction record on May 11, 2007. The deport tape clearly shows that the defendant was advised of his rights. And that's at Excerpt of Record number 64. That he was addressed personally at Excerpt of Record 65 through 67. That he agreed with the decision of the immigration judge. That's at Excerpt of Record number 67. And that looking at the proceeding itself, if you read the eight-page transcript, that takes you five minutes alone. If you also account for the fact that there were other individuals that were present during the removal proceedings, and you also account for the fact that there was an English to Spanish translation and a Spanish back to English translation, it clearly took longer than five minutes. All those things were things that the district court took into account in finding that the defendant had not accepted responsibility. Now, the district court said that he fought that element, namely deportation, vigorously, as was his right. Now, the defense in their appellate brief focused on the fact, well, this is not necessarily an element of the offense, the deportation, as a legal issue. Well, really it's of no moment, because within the acceptance of responsibility guideline, it talks about that you cannot give untruthful statements regarding relevant conduct. When you look at the relevant conduct guideline, 1B1.3, it talks about specifically that you can't make efforts to avoid detection or responsibility for that offense. And that's A1 within the actual guideline itself. And that's exactly what the defendant was doing. He was trying to avoid prosecution for that particular offense. But putting aside that issue of whether that credibility finding was accurate regarding the defendant actually saying these things, again, the appellate in the brief states that, well, there was some confusion regarding the defendant as to whether he was personally advised, because at the end of the proceedings, the appellate court or the immigration judge told him he didn't have a remedy. Throughout the defendant's own statements, he was talking in terms of the group. We, all, and we. That's what he was saying. Mr. Alexander, I think we understand your argument on the acceptance of responsibility. Unless my colleagues have any questions, I'd like you to address Judge Gould's question regarding the Rule 32 ruling. And I'd be happy to. And, actually, this gets back to your point, Judge Tallman, regarding whether the court, in fact, ruled on the criminal history section. I would have pointed out the Excessive Record No. 16. In addition, I think, as a part of that proceeding, we also need to consider what the judge actually said he considered. At the beginning of the sentencing, the district court talked about what he had reviewed and read, and that's Excessive Record No. 8, talking about the defendant's filings as well as the government's filings. Now, in particular, regarding the conviction records, those were contained at Clerk's Record No. 39, and those were submitted with the supplemental Excessive Record by the government. Now, at Excessive Record No. 20, the district court says that those documents, as well as the deportation proceedings, were, in fact, received into evidence. And the district court explained that receiving these into evidence would actually help further explain why the deportation ruling was, in fact, accurate. The district court did, in fact, prior to this hearing, review many of these convictions, not necessarily the conviction records, but the convictions themselves, in addressing the deportation collateral attack. Now, what he had done is he said that in looking at these convictions, he was trying to determine whether they were serious felonies or not serious felonies. And in looking at whether those were serious felonies, those are he's looking at Excessive Records No. 41 through 42, as well as Excessive Record No. 54 regarding the rape conviction. And what the defense counsel had been raising is issues regarding the sufficiency of what information was presented. But the important part is that looking at the conviction statutes themselves, this is not an issue where you necessarily need to go to a modified catechorical approach. This is something that just simply looking at the conviction itself would be sufficient. And that gets us to the guidance. Counsel Judge Gould, let me try to give you a more precise line on my concern. And you can address it. First of all, you know, there's a tremendous criminal record. And it appeared to me that there were at least some drug trafficking offenses or crimes of violence that would get you beyond the 1326A two-year limit. But nonetheless, if there was any conviction that the court considered in the guidelines calculation to which there was an objection and no finding of fact on a disputed item, it might change the guideline range. And my, well, I could be way off base here, but my notes were that I had come to a conclusion that the judge calculated a guideline range of 110 to 125 months, but that if you didn't consider a particular old conviction where he had disputed, you know, that the range would have been 92 to 115 months. Okay. So if that were true, if that's true, then under Gall and Cardi, that would be a procedural error, because you start with the premise there has to be a correct guidelines calculation before the court exercises discretion. And even if the lower guideline range would have permitted the 110-month sentence, we'd probably have to send it back to let the court decide. So, you know, am I missing something? But my point was that I thought that one of the convictions considered was too old to be considered in the absence of a probation or supervised release violation. I understand that. And that objection was made and the court did not make a finding in strict compliance with Rule 32. Anyway, that's my concern, if you could address it. Yes. And getting back to the point, I would certainly assert that the district court did address that at Excessive Record No. 16, where the court was, in fact, ruling on the criminal history category. Now, the other thing about just in general terms, you know, recently in United States v. Vanderwerst, this court said that one cannot allege that there are mistakes, then stand mute without showing why they are mistakes. Similar to that in United States v. Romero-Randone, as well as United States v. Charlesworth, in both of those cases, the Ninth Circuit decided that, in fact, a reliable pre-sentence report would be sufficient evidence in order to show that an individual had suffered a prior conviction. Now, the appellant here is mixing apples and oranges. What the government must show is a preponderance of the evidence regarding criminal history. However, regarding the 16-level enhancement, it would have to show clear and convincing evidence. Here what we have is a criminal history report that is unassailed. The criminal history report provides for the increase of three points for that prior conviction from 1981. Now, wait a moment. On the three points for the 1981, his objections, the written objections, seem to say, I don't agree that I was returned for over a month. Basically, that's what he says. How do we resolve that? If he were not returned for over a month, then that would be too old, right, because you've got to get it up into the 15-year category, correct? Yes. Okay. So he says, I wasn't detained for over a month, and respond. How do we deal with that? Well, I think that gets back to something to do with his declaration. Does he actually raise an issue of fact regarding this prior conviction? Simply saying that I don't remember or I'm not certain that, you know, regarding the time periods does not raise an issue of fact. What we have here, again. Well, he objects to it. Didn't he object to it being considered? Well, he objected in general terms. But, again, you can't sit there and object and provide no information in order to actually create an issue of fact. And that's precisely what happened. He created no issue of fact regarding the reliability of the pre-sentence report or regarding the reliability of the criminal history report. And certainly the defendant invited any error that may have occurred because he waived the pre-sentence report, which would have actually provided more time for the probation officer to file the pre-sentence report, to do further investigation, to provide the defense an opportunity to object as well as the probation officer an opportunity to respond. Now, the defense simply raising the issue to say I don't remember, that is insufficient to actually create an issue of fact. Well, what he says in his objections is absent proof that he was returned to custody for over a month, you can't count this conviction. Now, I think your response is the proof is simply that it's in the PSR. Yes. Or what, not the PSR, but in the report. The criminal history report. And that's enough. Even when he says that, you don't have to present anything more. Correct? Yes. And what's interesting is that the government actually submitted the objections that were filed by the defense in the supplemental excerpt of record. And we did so at page 11. The idea was to make sure that the Court was aware of what the objection was in fact and what was supporting the objection itself. And here, there isn't anything that actually supports the objection. It's just a general objection that's unsupported by anything and it doesn't necessarily contradict the criminal history report that was submitted by the probation officer. Well, are you saying that the district court, under the principle of strict compliance with Rule 32, did not have to make an express finding that he's crediting the criminal history report? Well, Your Honor, I think he does in that he rules that he is a criminal history category 6. And the other thing I think to consider here is whether Rule 32 is even applicable based on the fact that it's not a pre-sentence report. What we have here is a district court judge looking at the issue based on a criminal history report as well as the documents that were submitted by the parties. So there is some question as to whether Rule 32 is even applicable because the only controverted item that was submitted would have been the criminal history report. Okay. Thank you. Thank you. Thank you, counsel. Yes. Actually, Mr. Lechman, I'd like to hear your response to the last point about whether Rule 32 even applies in this circumstance. It had not occurred to me that because there was no PSR, Rule 32 may not apply at all. Well, I would assume that it would apply just as a policy matter because the same interest  Hang on just a second. I want to look at the language of the rule. Oh, that's okay. I was just wondering if you wanted me to wait to make the comments. Yes. Let me take a look at the language first to make sure that. It says for any disputed portion of the PSR or other controverted matter. Okay. I think it's a policy matter. Go ahead. Certainly fall under the controverted matter. Nice save. The government counsel cited a case called Charlesworth from the circuit. I'm very familiar with that case.  The government counsel decided that Charlesworth was not eligible for the PSR. And in that case, the district court actually put the defendant to the burden of proving that a negative, to proving that he hadn't been arrested. This Court in Charlesworth says it's unfair to put the burden on someone to prove a negative. It's just there's no way you could do it. And so to the extent that government counsel's statements indicate that somehow Mr.  on someone to prove a negative. Well, that contradicts with Charlesworth. I think it's a constitutional matter. It probably is contradicted by Ingray, Winship, and it's progeny. And I'm sorry for not being smart enough to sort of see where the Court was going with this a little earlier in my remarks. But with regard to the 1981 conviction, I don't know what else he would have had to say. Say, you know, this doesn't score. There's not enough sentence for it to score. That's a very specific objection. There are no specific findings in regard to that. It does make a difference in the criminal history score in terms of how long his actual sentence would be. It doesn't match up with the actual range that was presented. So I think as a matter of procedural, maybe even substantive reasonableness, I think that's a violation of Rule 32. It seems to me that that's a good enough objection to require the Court to make a finding greater than he's got a terrible record. Counsel, how do you respond? Counsel, Judge Gould, how do you respond to the government's argument that Rule 32 is satisfied when the court makes a finding, basically, that he's in Category 6? Because I understood the government. Right. So thereby, the court, the government must be — the court must be making a determination that rejected his contention, I guess. I believe that issue was addressed in the Court's prior decision in Houston. And the Court in that — Ninth Circuit said in that case that just because the court makes a determination, you cannot read into it that it implicitly ruled on the matter because Rule 32 requires an explicit finding. And so I think that adequately addressed that issue. Basically, you can't say, well, because the court imposed a particular sentence, that implicitly proves that the court resolved that objection one way or another. This Court has, in Houston and cases that came later, has issued that approach specifically. So I think that's your point. Thank you very much, Counsel. The case just argued is submitted. The Court will take a — probably about a 20-minute recess. We'll confer on the case we just heard argued and the other matters that were submitted on the briefs this morning. And then we will reconvene with the reconstituted panel to hear argument in United States v. Rule.
judges: Fernandez, Gould, Tallman